IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

|                                           |     |                                   |
|-------------------------------------------|-----|-----------------------------------|
|                                           | §   |                                   |
| **JAMES E. ROBERTSON,**                   | §   |                                   |
|                                           | §   |                                   |
| **Plaintiff,**                            | §   |                                   |
|                                           | §   |                                   |
| **vs.**                                   | §   | **Civil Action No. 1:04-CV-0185-C** |
|                                           | §   |                                   |
|                                           | §   |                                   |
| **JO ANNE B. BARNHART,**                  | §   |                                   |
| **Commissioner of Social Security,**      | §   |                                   |
|                                           | §   |                                   |
| **Defendant.**                            | §   |                                   |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed July 12, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on January 3, 2005, Defendant filed her brief on February 2, 2005, and Plaintiff filed his reply on February 17, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on November 27, 2002, with a protective filing date of November 5, 2002, alleging disability beginning May 30, 1997.  Tr. 22, 114.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 22, 96-102, 104-07.  Plaintiff filed a Request for Hearing by Administrative Law Judge on June 9, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on November 6, 2003.  Tr. 22, 35-93, 108-09.  At the hearing, Plaintiff requested an amended alleged onset date.  The ALJ found that because Plaintiff had not requested Appeals Council review of ALJ Gatzke's decision finding (regarding a prior application) that Plaintiff was not under a disability on or before August 21, 2001, he found that the new alleged onset date would be August 22, 2001.  Tr. 23, 38.  Plaintiff, represented by a non-attorney, testified in his own behalf.  Tr. 38-63.  A witness, Mary Chatham, also testified.  Tr. 64-69.  John Simonds, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well.  Tr. 70-91.  The ALJ issued a decision unfavorable to Plaintiff on January 29, 2004.  Tr. 19-31.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that Plaintiff met the disability insured status requirements on August 22, 2001, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since August 22, 2001.  Tr. 24, 29, 30.  He found that Plaintiff has "severe" impairments, including diabetes mellitus, depression, and right brachioplexy.  *Id.*  He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App.1.  Tr. 30.  Therefore, the ALJ was required to

determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy. Tr. 27-31.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 24, 25.

The ALJ found that Plaintiff could not return to his past relevant work as an electrician's helper, machine operator, roustabout, or construction helper. Tr. 28, 30. He noted that Plaintiff was considered a "younger individual" with a limited (11th grade) formal education. 20 C.F.R. §§ 416.963, 416.964.

The ALJ found that Plaintiff retained the RFC to perform, on a sustained basis, the exertional requirements of sedentary work activity, limited to jobs that do not require climbing scaffolds, ladders, or ropes; crawling, kneeling, or balancing; use of his right dominant upper extremity; working at unguarded heights or near unguarded hazardous mechanical equipment; and exposure to extreme temperatures or high humidity. Tr. 27-28. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 28-29. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of surveillance system monitor, with 2,800 jobs in the state and 214,000 nationally; telephone quotation clerk, with 4,000 jobs in the state and 160,000 nationally; and food and beverage order clerk, with 4,300 jobs in the state and 182,000 jobs nationally. Tr. 29, 31. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id*.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 24, 2004. Tr. 8-18. The Appeals Council issued its opinion on May 14, 2004, indicating that although it had

considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 5-7.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On July 12, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy.  Tr. 29, 31.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to fairly and fully develop the record; failed to account for the limitations reflected in his PRT findings; failed to consider the opinions of the reviewing agency physicians; relied on the vocational testimony which was elicited by a flawed hypothetical and cannot serve as substantial evidence to support a denial; and relied on vocational testimony that conflicted with the presumptions in the DOT.

**A.       Whether the Commissioner failed to file a complete administrative record on appeal.**

Plaintiff argues that the Commissioner failed to file a complete administrative record on appeal, as required by 42 U.S.C. § 405g.  Plaintiff further argues that the ALJ failed to fully and fairly develop the record by failing to incorporate documents from prior adjudications into the record.

In his opinion the ALJ noted that Plaintiff had impliedly requested that his prior applications be reopened.  Tr. 22.  He found that there was no new and material evidence of Plaintiff's condition as it existed during the effective life of the prior application, and he found no other good cause to reopen the prior  application.  *Id*.  The ALJ indicated that he would limit his consideration of the current application to the period beginning August 22, 2001, the alleged onset date, and noted that "any reference to medical evidence extant before the latter date is for historical purposes only and is not intent [sic] to reopen or revise the previous adverse determinations."  Tr. 23.

Plaintiff argues that "the ALJ could not come to that conclusion unless he actually had the prior determination before him so he could see what evidence had previously been considered." Pl. Brief at 11. He notes that the administrative record contains evidence from 1997-1998, and the question of whether it was "new" could not have been resolved unless the ALJ reviewed the prior determinations. *Id*. As a result, Plaintiff argues the Commissioner was required to include the evidence from the prior determinations in the record. *Id*.

The ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001)(quoting *Newton*, 209 F.3d at 458). The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). The court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)(citing *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996)). In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

In this matter, the ALJ found that the prior adjudications would not be reopened because there was no "new and material evidence of his condition, as it existed during the effective life of the prior applications." Tr. 22. When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. To justify a remand, 42 U.S.C. § 405(g) requires that the evidence must be new and material, and there must be good cause for the Plaintiff's failure to incorporate the evidence into the record before the ALJ's

decision. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Haywood v. Sullivan,* 888 F.2d 1463, 1471 (5th Cir. 1989).

In order to be material, such new evidence must relate to the time period for which the disability benefits were denied, and there must be a reasonable probability that this new evidence would change the outcome of the Secretar''s decision. *Ripley*, 67 F.3d at 555. Evidence is not material if it relates to a disability or to the deterioration of a previously non-disabling condition resulting after the period for which benefits are sought. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994); *Haywood*, 888 F.2d at 1471. The court noted in *Falco*:

> [I]t is implicit in the materiality requirement that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.

*Falco*, 27 F.3d at 164 (quoting *Haywood*, 888 F.2d at 1471).

Plaintiff argues that "[i]f evidence from this period [the prior adjudications] was part of the prior record, it would have provided background information the ALJ should have considered for full evaluation of the case." Pl. Brief at 11. Plaintiff relies upon *Hamlin v. Barnhart*, where the Tenth Circuit noted that "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). The Tenth Circuit further noted in *Hamlin* that medical reports from a prior adjudicated period that were a part of the claimant's case record should have been considered by the ALJ. *Hamlin*, 365 F.3d at 1223 (citing 42 U.S.C. § 423(d)(5) and 20 C.F.R. § 404.1527(d)). These authorities, however, refer to evidence *in* a claimant's case record. The error that Plaintiff alleges is the failure to include information from past applications in the administrative record of the instant case. *Hamlin* is inapposite.

Plaintiff argues that he has demonstrated prejudice because his representative and counsel could not ascertain what the findings were on the prior adjudications and could not "provide arguments regarding the impact of those findings and to make other reopening arguments." Pl. Brief at 11-12. Plaintiff correctly notes that the ALJ must have determined that the evidence was either not "new" or not "material." Plaintiff argues that this demonstrates that the ALJ "must have reviewed the evidence from the prior period before ruling on this matter." Pl. Reply at 3.

However, Plaintiff's arguments fail to establish any prejudice. His reliance upon *Hamlin* is misplaced. In *Hamlin*, the Tenth Circuit considered medical reports that dated from an earlier adjudicated period, which were a part of the claimant's case record, and found that they should have been considered by the ALJ. *Hamlin*, 365 F.3d at 1223. The *Hamlin* decision does not stand for the proposition that all evidence from all prior adjudications must always be incorporated in the administrative records of subsequent applications. Nor does the ALJ decision demonstrate that the ALJ indeed considered such evidence in determining that Plaintiff was not disabled under the current application. Plaintiff's representative indicated at the hearing that he did not think there was a basis for reopening the prior applications. Tr. 38. He also asked that the alleged onset date be amended in light of there being no basis for reopening the prior adjudications. *Id*. The ALJ's determination on the implied request for reopening is consistent with the indication by Plaintiff's representative that the hearing date should be amended and that there was likely no basis for reopening the prior applications. Plaintiff alleges that the "question is whether the ALJ would be justified in ignoring the medical evidence just because it came from a prior period." Pl. Reply at 4. The operative question is, however, whether Plaintiff has demonstrated prejudice from the alleged failure to fully and fairly develop the record. *Brock*, 84 F.3d at 727. Plaintiff identifies no actual prejudice. Rather, he argues that he might have had "the opportunity to provide arguments" regarding the ALJ findings in the previous determinations and might have made other reopening

-8-

arguments.  Pl. Brief at 12.  Plaintiff's allegations fail to indicate that he "could and would have adduced evidence that might have altered the result."  *Carey*, 230 F.3d at 142 (quoting *Kane*, 731 F.2d at 1220).  I find that the ALJ did not err by failing to incorporate all evidence from the prior applications into the case file.

**B.    Whether the ALJ erred by failing to incorporate limitations noted on the psychiatric review technique form ("PRTF") into his RFC finding and into the hypothetical questions posed to the VE.**

Plaintiff alleges that the ALJ erred in making his RFC assessment by failing to include limitations noted on the PRTF.  Plaintiff argues that the noted moderate limitation on social functioning should have been reflected in the RFC finding and in the questions posed to the VE.

Where the ALJ has determined that Plaintiff has a medically determinable mental impairment, he is required to evaluate the degree of functional loss imposed by Plaintiff's mental impairments, as set forth in 20 C.F.R.§§ 404.1520a and 416.920a.  *Boyd*, 239 F.3d at 705. These regulations describe the manner in which the ALJ rates the functional limitations imposed by any mental impairments.  Functional loss resulting from the impairment is evaluated in four separate areas deemed essential for work.  *Boyd*, 239 F. 3d at 698 (citing 20 C.F.R. § 404.1520a(b)(3)).  The PRTF represents one way in which such findings may be documented.  20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the judge determines the severity of such impairment(s).  20 C.F.R. § 404.1520a(d).  If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the

level of a listed disorder, then the ALJ must conduct a residual functional capacity assessment. *Boyd*, 239 F.3d at 698.

Plaintiff argues that because the ALJ found that Plaintiff was moderately limited in social functioning in making his step 2 severity determination, he was required to incorporate such limitations into his RFC finding and the hypothetical posed to the VE.

Social Security Ruling 96-8p provides that:

> The psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

Social Security Ruling 96-8p (July 2, 1996)("SSR 96-8p"). This Ruling specifically notes that the PRTF, used at steps 2 and 3, is distinct from the RFC finding used at steps 4 and 5 of the sequential evaluation process. *Id*. The Ruling further notes that " RFC is an issue only at steps 4 and 5 of the sequential evaluation process." *Id*.

Plaintiff points to *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3rd Cir. 2004). In *Ramirez*, the Third Circuit found that the hypothetical posed to the VE did not include all of the limitations noted by the ALJ both in her opinion and in the PRTF that she completed. *Ramirez*, 372 F.3d at 554. The Third Circuit rejected the argument of the Commissioner, premised on the language of 96-8p, that the PRTF findings are relevant only at steps 2 and 3. *Id*. at 555.

The opinion of the ALJ indicates that he found that Plaintiff's depression led to work-related mental limitations, including the inability to maintain fixed concentration and attention for periods

of longer than twenty minutes without the opportunity to briefly refocus for a minute or two and come back to fixed concentration and the inability to understand, remember, and carry out more than simple instructions.  Tr. 27.  The ALJ also found that Plaintiff's depression mildly affected his activities of daily living; moderately affected his concentration, persistence, and pace; affected his short term memory such that he was limited to simple, unskilled tasks; noted one possible episode of decompensation; and found that his social functioning is moderately affected, *although his isolated behavior does not appear to the be to the extent that he cannot get along with others in a workplace.*  Tr. 27 (emphasis added).  The ALJ's opinion demonstrates that he considered the degree to which Plaintiff's depression limited him in the four functional areas identified in 20 C.F.R. § 404.1520a, as well as the degree to which such impairments limited his ability to perform work-related activity.

Plaintiff notes that the ALJ found that his social limitations did not preclude him from getting along with others in the workplace.  He argues that this finding does not demonstrate that the ALJ appropriately considered the degree to which his social limitations affected his RFC.  Although Plaintiff relied upon *Ramirez*, the facts of that case may be distinguished from the case at hand.  In *Ramirez*, the Third Circuit noted that the ALJ had indicated, both in her opinion and in the PRTF, that the claimant "often suffered from deficiencies in concentration, persistence, or pace." *Ramirez*, 372 F.3d at 554.  The VE had testified that each of the jobs she identified as suitable for a person of the claimant's RFC, including assembler, packer, and inspector, would have daily production quotas which would require the claimant to maintain a certain degree of pace to maintain those jobs. *Id.*  In the instant case, the ALJ found that Plaintiff had moderate social limitations and specifically found that those social limitations were not to the extent that they would limit Plaintiff from getting along with others in the workplace.  Tr. 27.  "Residual functional capacity" refers to the ability to perform work despite physical or mental impairments.  20 C.F.R. § 404.1545a.  SSR 96-8p provides

that "[t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  Functional limitations are evaluated on the PRTF to determine the extent to which the mental impairment(s) interferes with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis. 20 CFR § 404.1520a(c)(2). While the ALJ's finding of moderate impairment in social functioning at step 2 is clearly relevant to the RFC determination, a finding of such impairment at step 2 does not necessitate that such an impairment be incorporated into the RFC finding if the ALJ finds that the impairment does not limit the claimant's ability to perform work. The ALJ appropriately considered the degree to which Plaintiff's limits in social functioning would limit his ability to perform work.  I find that the ALJ did not err by failing to incorporate a limitation into the RFC finding to reflect the PRTF finding of moderate limitation in social functioning.

Plaintiff further alleges that the ALJ erred by not incorporating such a limitation into the hypothetical questions posed to the VE.  A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)).  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.*  In testifying, a  vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336

(5th Cir. 1988).  The hypothetical questions  presented to the VE need only reasonably incorporate the limitations accepted by the ALJ.  *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994)(no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).   The record demonstrates that the ALJ incorporated those limitations that he accepted in the hypothetical questions posed to the VE.  Tr. 82-88.  The record further demonstrates that Plaintiff's representative examined the VE about the effect that further proposed limitations would have on the availability of the identified jobs.  Tr. 84-91.  Having found that the ALJ did not err by failing to incorporate a moderate social limitation into his RFC finding, I further find that the ALJ did not err by failing to incorporate such a limitation into the hypothetical questions posed to the VE, nor did he err by relying upon the VE testimony.

**C.**     **Whether the ALJ erred by failing to consider the opinions of the reviewing agency physicians.**

Plaintiff argues that the ALJ erred by failing to incorporate the functional limitations noted by the state agency medical consultants into the RFC assessment and by failing to explain the weight given to such opinions.  Plaintiff notes that the Mental RFC form completed by the consultants indicated that Plaintiff was moderately limited in several areas, including the ability to deal with the general public; the ability to accept instructions and criticism from supervisors; the ability to perform detailed tasks and make simple work-related decisions; and the ability to adapt to changes in the work place, and Plaintiff was further limited to work involving simple, repetitive tasks.  Tr. 329-31.  Plaintiff alleges that the ALJ failed to discuss this assessment and excluded them from his RFC assessment  without comment.

A state agency medical consultant completed a psychiatric review technique form which indicated by checkmark that an RFC assessment was necessary, based on Plaintiff's depression and related characteristics. Tr. 314-28. The degree of resulting functional limitations was also noted by checkmark. Tr. 324. A mental residual functional capacity assessment form was completed by another medical consultant; it indicated by checkmark the degree of various limitations from Plaintiff's mental impairments in more detail. Tr. 329-32. The consultants explained their opinions more fully by noting that "[t]he limitations due to the claimant's symptoms are not fully supported by objective medical evidence" and that "[c]laimant retains the ability to understand, remember, and carry out simple directions, relate appropriately to coworkers and supervisors, and complete [a] workday of simple, repetitive tasks." Tr. 326, 331. In his opinion, the ALJ noted that he had:

> considered the severity and functional capacity proposals issued by the DDS physicians reviewing this claim at the earlier levels suggested that the claimant retained the exertional capacity for medium work duties, with the same type of nonexertional restrictions listed by Dr. Simonds. . . . I considered the expert testimony and the non-binding proposals and brief, explanatory rationales as I made the severity and functional capacity determinations discussed herein and, while I find the proposals are not supported by the evidence, I agree that the evidence does not establish that claimant has incapacitating physical ailments.

Tr. 26.

Plaintiff argues that he was "prejudiced by the ALJ's failure to consider the RFC assessment made by the agency physicians." Pl. Brief at 14. It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion. *See* 20 C.F.R. §§ 416.946, 416.927(e). The ALJ considered the medical opinions of the state agency medical consultants in making his RFC determination, pursuant to 20 CFR §§ 404.1527, 416.927, and SSR 96-6p. Tr. 26. The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion. Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most

supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ also has the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions. *Masterson*, 309 F.3d at 272.

The ALJ's PRT findings and RFC assessment are, in any case, consistent with the more detailed opinions given by the state agency medical consultants, who opined that Plaintiff retained the ability to understand, remember, and carry out simple directions, as well as the ability to relate appropriately to coworkers and supervisors in completing a workday of simple, repetitive tasks. Tr. 331. The ALJ incorporated a concentration limitation into his RFC finding, found that Plaintiff should be limited to simple, unskilled tasks, and found that although Plaintiff's social functioning was moderately limited, he was not precluded from getting along with others in the workplace. Tr. 27. Although the consultants indicated a moderate limitation in dealing with the public and a moderate limitation in the ability to accept instruction and criticism from instructors, they also opined that Plaintiff retained the ability to relate appropriately with coworkers and supervisors. Tr. 329-31. I find that the ALJ did not err in his consideration of the opinions of the state agency medical consultants.

Plaintiff further argues that if the ALJ had asked the VE to consider the limitations set forth by the state agency medical consultants, the VE might have concluded that the alternative jobs could not be performed. Plaintiff's allegations fail to indicate that he "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane*, 731 F.2d at 1220). Thus, I further find that Plaintiff has failed to demonstrate any prejudice.

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the

ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790.

**D.      Whether the ALJ erred by relying on vocational testimony that conflicted with the presumptions in the DOT.**

Plaintiff further argues that the ALJ erred by relying on vocational testimony that conflicted with the Department of Labor's Dictionary of Occupational Titles ("DOT"). Plaintiff notes that the ALJ asked the VE to assume that the hypothetical individual should not be required to understand, remember, and carry out more than simple instructions.  Tr. 82.  Plaintiff argues that the jobs identified by the VE all have a required reasoning level of 3, which is defined in the DOT as the ability to follow detailed instructions involving several variables.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan*, 58 F.3d at 132 (citing  *Fields*, 805 F.2d at 1170). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.*  In testifying, a  vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. Tthe Fifth Circuit noted in *Fields*, however, that the DOT differs from the testimony of a vocational expert. *Id* at 1171**.**

The Fifth Circuit further stated in *Carey v. Apfel* that it had not yet resolved the issue of a possible conflict between the testimony of a vocational expert and the DOT:

> Our own Circuit has not addressed when a conflict exists or how such a conflict is to be resolved. We have, however, refused to uphold a determination of disability when premised solely upon DOT job descriptions, rather than upon the testimony of a vocational expert or other similar evidence. When, as here, the claimant suffers

from additional limitations that make the Medical-Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence. This Court has recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job. 'The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.' Thus, although this Court has not addressed when there is a conflict between the testimony of a vocational expert and the DOT and how that conflict is to be resolved, this Court has acknowledged that *the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job.*

*Carey*, 230 F.3d at 145 (internal citations omitted)(emphasis added).

Soc. Sec. Ruling 00-4p (December 4, 2000)("SSR 00-4p") indicates that "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT."  The Ruling provides that "[w]hen there is an apparent unresolved conflict between VE or VS [(vocational specialist)] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.* Neither the DOT nor the VE automatically "trumps" when there is a conflict. *Id.*

The DOT provides that jobs with a reasoning level of 3 require that the person apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  DOT, vol. II at 1011 (1991). A job with a reasoning level of 2 requires the application of commonsense understanding to carry out detailed but uninvolved written or oral instructions. *Id.* Jobs with a reasoning level of one require the application of commonsense understanding to carry out simple one- or two-step instructions.  *Id.*  Plaintiff argues that the ALJ failed to resolve an apparent conflict between the testimony of the VE and the DOT.

At the hearing, the VE testified that his testimony did not conflict with the DOT.  Tr. 84. Plaintiff's representative further examined the VE about the degree to which writing and computer

use was required.  Tr. 84-87.  He questioned the VE about the reading skills required in light of Plaintiff's education. Tr. 87.  He also asked whether any of the identified jobs required the individual to perform on a production rate basis. Tr. 89.

The record of this case does not demonstrate an actual conflict between the VE's testimony and the DOT.  *Carey*, 230 F.3d at 146.  As Plaintiff correctly notes, the RFC limitation that Plaintiff not be required to carry out, understand, or remember more than simple instructions does not precisely coincide with the reasoning levels indicated by the DOT for the identified jobs.  However, as provided in SSR 00-4p, and as recognized by the Fifth Circuit, the VE may rely upon his own experience and expertise in testifying about jobs or occupations.  *See Vaughn,* 58 F.3d at 132; *Fields*, 805 F.2d at 1170. Plaintiff's representative was provided with the opportunity to examine the VE at length about the effect of Plaintiff's limitations on the identified jobs.  The record indicates that the ALJ did not improperly rely upon the testimony of the VE nor does it indicate a conflict between the testimony of the VE and the DOT rendering such testimony insufficient to constitute substantial evidence.  *Bowling*, 36 F.3d at 435-36 (no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file

written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.   *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 1st day of September, 2005.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**